FRANCES ROSENQUIST, Plaintiff and Respondent, v. HERSCHEL G. HARDING and BEATRICE L. HARDING, husband and wife, Defendants and Appellants.

No. 14070.
Submitted April 17, 1978.
Decided Dec. 7, 1978.
587 P.2d 416.

Robert S. Keller, Murray, Donahue and Kaufman, Kalispell, for defendants and appellants.

Evans & German, Fennessey, Crocker & Harman, Libby, for plaintiff and respondent.

MR. JUSTICE SHEA delivered the opinion of the Court.

Defendants appeal from judgment of the Lincoln County District Court, sitting without a jury, by which they were awarded only one-fourth of the balance due under a four-year contract with the plaintiff for the extraction, procession and marketing of peat moss from defendants' property.

The sole issue on appeal is whether there was sufficient finding that plaintiff's performance under the contract was prevented in part by defendants and in part by the weather. In reviewing the evidence, we hold the evidence sustains the District Court's findings and conclusions.

Defendants, Mr. and Mrs. Harding, own property on which a 55 acre peat bog bordered by the Yaak River is located. On November 22, 1971, plaintiff (Mrs. Rosenquist) and defendants entered into a written four-year contract by which Mrs. Rosenquist at her own expense was to extract, process and market peat moss taken from the bog for a period of four years. Mrs. Rosenquist was to pay the Hardings $1,000.00 each year, in advance, to be applied toward the first, 2,000 cubic yards of peat moss removed and 50 cents per cubic yard of peat moss removed thereafter. The agreement further provided that Mrs. Rosenquist was to remove 6,000 cubic yards or more during the four-year life of the contract and contained an option to renew the contract, with proportional increase in cost per cubic yard, provided she "in all respects performed the terms and conditions." One of the terms was that no work be conducted between sundown Friday and sundown Saturday.

Mrs. Rosenquist paid $1,000.00 at the execution of the contract and $1,000.00 each on the anniversary dates of 1972, 1973 and 1974.

During the four years, she removed only a total of 720 cubic yards of peat moss. The contract expired by its terms on November 22, 1975. On December 22, 1975 Mrs. Rosenquist paid the Har-

dings $1,266.67. Sometime later, the Hardings refused her access to the premises and entered into an agreement with another for removal and processing of the peat moss.

Mrs. Rosenquist brought suit for reformation of contract, alleging it was orally modified and renewed for an indefinite period and seeking $300,000.00 in damages for its breach. Defendants answered by filing a general denial and by filing a counterclaim for $24,863.33 plus interest, which represented the balance due under the existing contract.

At the outset of trial, the court dismissed plaintiff's complaint for the reason that section 13-907, R.C.M.1947, prohibits oral modification of written contracts not fully performed. Defendants rested their counterclaim upon facts stipulated by the parties. Plaintiff then presented evidence that delays occasioned by defendants prevented her performance under the contract.

Plaintiff, a woman past middle age, was not experienced in working this type of peat bog. She experimented with a number of methods for removing and drying the peat over the life of the contract. As stated in the court's findings, she was "very solicitous of the ideas, suggestions, feelings and demands of the defendants" in her attempts to extract peat from the bog. She wanted to avoid trouble, because she felt she would not be able to complete the contract without defendant's goodwill and approval. Unfortunately, defendant's goodwill was not forthcoming. Neither was his cooperation.

In the summer of 1975, defendant Herschel Harding told Buck Kidder, a ranch hand, that he was going to break his contract with plaintiff even if he had to refuse money, and before he was finished with her he would own all her equipment. Defendant told Kidder to delay harvesting the hay until as late in the season as possible, because he did not want her treading on the bog. At the end of the four-year contractual term. Harding's prediction came true. The contract was broken because plaintiff failed to remove and market the amount designated. Looking back over significant events of the preceding years, the District Court determined that the failure was

not chargeable to plaintiff alone. These incidents were incorporated into the court's findings summarized below.

In both the spring of 1972 and the summer of 1973, defendants ran off plaintiff's employees for working what they believed was too close to sundown on Friday. In each instance the employees never returned to the bog.

Certain advice or suggestions were given by defendant which proved to be misinformation. In the summer of 1972, defendant recommended that plaintiff use dynamite to make drainage ditches. It was tried and did not work. During the summer of 1973, defendant prohibited the cutting or marking of certain trees needed to anchor the cable used for the "highline system", thus restricting placement of the highline. Preliminary work continued and a cable was laid across the bog in preparing for installation of the highline. Somehow, a five-foot man-made goose nest appeared on the bog the next day and was so positioned that it interfered with installation of the highline. Thereafter, at defendant's suggestion, plaintiff abandoned the highline system in favor of a barge and crane peat removal system.

In 1973 and 1975, plaintiff placed plugs in a culvert between the bog and the river to keep water out once it had drained. These plugs were repeatedly removed, and were once punctured. Mrs. Harding later told plaintiff not to replace the plugs because Mr. Harding did not want them there.

Before 1973 the bog was too wet to grow hay, but in 1973, 1974 and 1975, the Hardings grew and harvested hay over the entire bog from early spring until late summer. They warned plaintiff to stay off the bog until the hay was cut.

In early 1974 there was a flood and the bog did not dry until summer's end due to high water.

On October 21, 1975, plaintiff told Mr. Harding of her arrangements for money to renew the contract under the renewal provision. Mr. Harding, not wanting to jeopardize his social security payments, assured her he knew about the problems with the bog, that he was a fair man and would take the money "when the time

comes". Later, the Hardings left to visit their family on the west coast and did not return until after the time for payment under the contract had expired.

The defendants contend that these incidents should not have prevented plaintiff's performance. Their position is that these complications would not have caused delay if plaintiff had used the highline system from the start. Use of the highline system would permit year-round peat removal regardless of flooding or freezing and eliminate the need for culverts, plugs or traversing the bog.

The focus of defendant's attack is thus leveled at what plaintiff should have done, knowing what is now known. We do not review evidence from this hindsight vantage. Rule 52(a), Mont.R.Civ.P., provides in part:

". . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

This Court will not disturb the District Court's findings of fact where substantial credible evidence supports such findings. *Montana Farm Service Co. v. Marquart* (1978), 176 Mont. 357, 578 P.2d 315, 316. Here there is substantial credible evidence in the record to support the court's judgment.

The judgment is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON and SHEEHY concur.